UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABRAHAM DUARTE,

     Plaintiff,

v.                         Case No.:  2:25-cv-408-SPC-DNF

TROOPER JAVIER RIVERA and
FLORIDA HIGHWAY PATROL,

     Defendants.

_____

## **OPINION AND ORDER**

     Before the Court are: (1) Defendant Florida Highway Patrol's ("FHP") Motion to Dismiss Amended Complaint With Prejudice (Doc. 60) and pro se Plaintiff Abraham Duarte's response (Doc. 66); and (2) Defendant Trooper Javier Rivera's Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice (Doc. 63) and Duarte's response (Doc. 65) (FHP and Trooper Rivera are jointly "Defendants").  For the reasons below, the Court grants the motions to dismiss.

### **Background**[1]

     This civil rights action stems from a traffic stop in Punta Gorda, Florida on March 16, 2024, which resulted in Duarte's arrest.  Trooper Rivera, a five-

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Duarte.  *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

year veteran of FHP's Criminal Interdiction Unit and K9 handler, stopped Duarte's rental vehicle for reckless driving. He found Duarte in possession of 453.87 grams (approximately one pound) of marijuana and arrested him. Duarte alleges Trooper Rivera was "visibly frustrated and agitated by [Duarte's] calm and nonchalant demeanor" because the marijuana-related charges involved relatively minor penalties. (Doc. 54 at 2).

Law enforcement transported Duarte to Charlotte County Jail. There, Trooper Rivera tested the marijuana for the presence of THC and other drugs using a NARK II Fentanyl Reagent. Several hours elapsed between the seizure of the marijuana and the testing, during which the evidence was in Trooper Rivera's unsupervised custody. He did not have a body-worn camera, take photos of the test kit, or observe fentanyl safety protocols. According to Trooper Rivera's affidavit, the test indicated fentanyl and resulted in charges for fentanyl trafficking and possession of a controlled substance. Duarte alleges Trooper Rivera "manipulated the NARK II test to produce a false positive during this unsupervised period." (*Id.* at 3).

At Duarte's first appearance at the jail on March 17, he was denied bond on the trafficking charge and held on pretrial detention. On March 21, allegedly to justify Duarte's continued detention, Trooper Rivera testified at the pretrial detention hearing about a white powdery substance, that the

2

NARK II test kit exploded when he tested the marijuana, and that Duarte had a history of heroin possession.

Later, Duarte hired Barry Funck, a forensic chemist who formerly served as Chief Forensic Scientist at the Florida Department of Law Enforcement ("FDLE"). Funck testified that it "is a common misconception that marijuana is laced with fentanyl . . . and that an 'exploded' test kit is 'highly unlikely' and does not occur in proper Nark II testing." (*Id*. at 3). Following this testimony, on May 6, Duarte was released on bond. On June 21, the FDLE lab confirmed that the marijuana did not contain fentanyl, a white powdery substance, or any other illegal substance beyond cannabis. On August 28, the trafficking charge was dropped.

Duarte alleges that Trooper Rivera falsely claimed in his police report and at the pretrial detention hearing that: the marijuana contained a white, powdery substance; Duarte had a criminal history of heroin possession, and the NARK II kit exploded during testing to sustain an unfounded fentanyl trafficking charge. (*Id*. at 4). He alleges these fabrications were reckless, intentional, and motivated by actual malice. (*Id*. at 4, 8).

Duarte filed his first civil rights complaint against Defendants in May 2025 (Doc. 1) and a first amended complaint the following month (Doc. 6). In September 2025, Duarte brought nine claims in a second amended complaint: (1) Fourth Amendment violation for unreasonable seizure under 42 U.S.C. §

3

1983 against Trooper Rivera (count 1); (2) Fourteenth Amendment violation of due process under § 1983 against Trooper Rivera (count 2); (3) municipal liability under § 1983 against FHP (count 3); (4) malicious prosecution under § 1983 against Trooper Rivera (count 4);[2] (5) negligence against Defendants (count 5); (6) defamation against Defendants (count 6); (7) intentional infliction of emotional distress against Trooper Rivera (count 7); (8) Fourteenth Amendment violation for due process – fabricated evidence under § 1983 against Trooper Rivera (count 8); and (9) negligence per se against Defendants (count 9).  (Doc. 54).

Duarte was detained for 52 days, incurred $65,000 in legal fees, and suffered public embarrassment and shame because he had to wear an ankle monitor as a condition of bond.  He allegedly suffered severe emotional distress, including post traumatic stress disorder, depression, anxiety, and stress from facing a 25-year sentence.  Duarte also alleges that on March 18, 2024,

> gulfcoastnewsnow.com published an article, sourced from FHP, "falsely labeling Plaintiff as a fentanyl dealer, causing public humiliation, social ostracism, severe emotional distress (PTSD, depression, anxiety, stress, nightmares of false accusations), diminished quality of life, trauma from seeing FHP vehicles, reputational harm, and damaged personal and business relationships (collectively, the "Common Damages").

---

[2] Though Duarte does not invoke the Fourth Amendment in count 4, a malicious prosecution claim brought under § 1983 arises under the Fourth Amendment.  *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) ("This Circuit has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983.") (citation and internal quotation marks omitted).

(*Id.* at 3–4).

Duarte seeks compensatory damages against Defendants, punitive damages against Trooper Rivera, injunctive relief against Defendants requiring immediate laboratory confirmation for NARK II Fentanyl Reagent and other NARK II test results to prevent future false positives, and costs. (*Id.* at 11). Defendants move to dismiss all claims. (Docs. 60, 63). The Court grants the motions for the reasons stated below.

## Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when a court lacks subject-matter jurisdiction. To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Rule 12(b)(6) is read alongside Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997). The rule is not designed to strike inartistic pleadings or provide a more definite statement to answer an apparent ambiguity, and the analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and its attachments. *Id.* (citing 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356 at 590–92 (1969) (Wright & Miller)).

Pro se complaints are construed liberally and held to less stringent standards than formal pleadings that lawyers draft. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But this leniency has its limits. Courts neither "serve as de facto counsel for a [pro se] party," nor "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168–69 (citation omitted).

## Analysis

### Compliance with the Local Rules

First, a housekeeping matter. Middle District of Florida Local Rule 1.08(a) requires that the main text of a paper be at least 13-point font and

double-spaced.  Further, it lists requirements for margins, page numbering, typefaces, character spacing, among other things.

The second amended complaint and Duarte's response briefs do not comply with Local Rule 1.08's typography requirements.  Rather, his papers are single-spaced, do not include page numbers, and include blurry, faded text at the top of some pages, making it impossible for the Court to read.  The Court nearly struck all of Duarte's papers on this basis alone but did not, given the advanced stage of the briefing.  The Court will not be as lenient going forward. Duarte must read and comply with all Local Rules in future filings.  *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (pro se litigants are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure").  Failure to do so will result in his filings being stricken without further notice.

*Pleading Deficiencies*

Before addressing Defendants' individual motions to dismiss, the Court addresses a challenge raised in both motions— that the second amended complaint is a shotgun pleading and does not comply with Federal Rules of Civil Procedure 8 and 10.  (Doc. 60 at 13; Doc. 63 at 16).  Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 concerns the form of pleadings. Shotgun pleadings violate Rule 8 "by fail[ing] . . . to give the defendant adequate notice

of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm City Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Resolving claims asserted in shotgun pleadings is "an undue tax on the Court's resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 (11th Cir. 2018). "Tolerating such behavior constitutes toleration of obstruction of justice." *Id.*

Defendants argue that the second amended complaint fails to state the claims in numbered paragraphs; is disorganized, with some claims appearing as bullet points and others as numbered text; lacks clear structure. Defendants also argue that Duarte labels all damages as "Common Damages" and does not specify which Defendant caused what damages, how each Defendant caused the damages, or how they specifically apply to each of Duarte's claims. (Doc. 60 at 14; Doc. 63 at 16). Further, they argue the second amended complaint contains conclusory, vague, and immaterial allegations that are not connected to any particular cause of action. (Doc. 63 at 16).

The Court agrees that the second amended complaint contains some aspects of a shotgun pleading. For instance, Duarte alleges "Common Damages" (Doc. 54 at 4) and then refers to that section throughout the second amended complaint, violating the rules against shotgun pleadings. He also violates Rules 8 and 10. His paragraphs are not properly numbered; instead, they are organized in an outline format and contain asterisks serving as bullet

points.  Particularly problematic is that Duarte repeats allegations and facts throughout the second amended complaint, making it difficult to discern what facts relate to what claims.  Under these circumstances, the second amended complaint is dismissed as a shotgun pleading and more generally for failing to comply with Rules 8 and 10.  To avoid dismissal with prejudice as a shotgun pleading, Duarte must comply with Rules 8 and 10 if he files an amended pleading.  The Court now turns to the motions to dismiss.

*FHP's Motion to Dismiss*

Duarte alleges that FHP is a "division of the Florida Department of Highway Safety and Motor Vehicles, a state agency responsible for the training, supervision, and policies governing its troopers, including Trooper Rivera." (Doc. 54 at 2).  FHP argues that because it is an arm of the state, Eleventh Amendment sovereign immunity bars Duarte's claims against it. (Doc. 60 at 5).  For these reasons, the Court agrees.

Eleventh Amendment immunity is a jurisdictional issue.  *Bear Warriors United, Inc. v. Hamilton*, 749 F. Supp. 3d 1217, 1223 (M.D. Fla. 2024) (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)).  "[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists."  *Thomas v. U.S. Postal Service*, 364 F. App'x 600, 601 (11th Cir. 2010).

The Eleventh Amendment protects a nonconsenting State from suit in federal court by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10, 20–21 (1890). Likewise, "Eleventh Amendment immunity bars suits brought in federal court when . . . an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Usually at this point, courts consider the four-factor test set out in *Manders* to decide whether an entity qualifies as an "arm of the State." *Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll., Fla.*, 421 F.3d 1190, 1192 (11th Cir. 2005). But the Eleventh Circuit has already done the heavy lifting.

The Eleventh Circuit has found that "[t]he Florida Highway Patrol is a state agency, and as such the [plaintiffs] cannot bring a § 1983 claim against it." *McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles*, 438 F. App'x 754, 756 (11th Cir. 2011). Even Duarte acknowledges that "the Eleventh Amendment immunizes states from monetary damages in federal court absent waiver or abrogation[.]" (Doc. 66 at 1). As FHP is a state agency entitled to Eleventh Amendment immunity, Duarte's municipal liability claim for monetary damages is dismissed.

But the question remains: does Duarte's request for injunctive relief against FHP under § 1983 survive? He "seeks prospective injunctive relief to mandate laboratory confirmation for NARK II test results and remedy ongoing

policy failures." (*Id.* at 1 (citing Doc. 54 ¶ IV.C)).  He argues that *Ex parte Young*, 209 U.S. 123 (1908), allows such relief.  (*Id.*).

"When a plaintiff challenges a state official's action on federal grounds, *Ex parte Young* allows the plaintiff to seek prospective injunctive relief."  *Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763, 774 (11th Cir. 2020).  The doctrine applies only if "a violation of federal law by a state official is ongoing[,] as opposed to cases in which federal law has been violated at one time or over a period of time in the past."  *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000).  "In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).

The request for injunctive relief against FHP fails for several reasons.  It is not a claim for relief against a state official; it is a claim against the State itself (*i.e.*, FHP).  And "the doctrine does not permit suit against an arm of the state."  *Parfitt v. Fla. Gulf Coast Univ.*, No. 219CV727FTM38NPM, 2020 WL 1873585, at *3 (M.D. Fla. Apr. 15, 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.")); *see also Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019)

(per curiam) ("Because the Board is an 'arm of the state' itself—and not an individual officer—[Plaintiff's] request for injunctive relief against the Board fails."); *Eubank v. Leslie*, 210 F. App'x 837, 844–45 (11th Cir. 2006) (per curiam) ("State agencies, however, are never subject to unconsented suit, even under the doctrine of *Ex parte Young*.").

Additionally, to the extent Duarte alleges any violation requiring an injunction, it is a violation of state—not federal—law.  (Doc. 54 at 11 (requesting injunctive relief against FHP requiring immediate laboratory confirmation of NARK II test results to prevent future false positives, "as Rivera failed to seek such confirmation in Plaintiff's case despite FHP Policy 7.08")).

Finally, as FHP argues, to receive injunctive relief in a § 1983 action, "plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if relief is not granted, and the absence of an adequate remedy at law."  (Doc. 60 at 12) (citing *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000)).  Here, Duarte has not specified any persons who would stand to either gain or lose from the entry of an injunction, and his own criminal case has fully resolved.  He has not alleged any continuing risk of injury to any person(s) or why this risk is serious.  So Duarte's § 1983 claim for injunctive relief against FHP is also dismissed.

Next, the Court addresses Duarte's state law claims of defamation, negligence, and negligence per se.  FHP argues the State has not waived sovereign immunity to be sued in federal court on these claims.  (Doc. 60 at 6–7).

Section 768.28(18), Florida Statutes, provides:

> No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court.

Although § 768.28 waives the States's immunity for tort actions brought in state court, the statute does not waive its Eleventh Amendment immunity from suit in federal court.  *See Manders*, 338 F.3d at 1312; *Schopler v. Bliss*, 903 F. 2d 1373, 1379 (11th Cir. 1990).

Duarte agrees, acknowledging "that Florida has not waived sovereign immunity for tort claims in federal court under Fla. Stat. § 768.28(18)." (Doc. 66 at 2).  Under these circumstances, the Court finds that the Eleventh Amendment bars the state law claims against FHP in federal court.  In sum, FHP is dismissed from this case on sovereign immunity grounds.

*Trooper Rivera's Motion to Dismiss*

Trooper Rivera argues that the Court should dismiss the second amended complaint because: he is entitled to qualified and sovereign immunity on all claims; the second amended complaint fails to comply with the pleading standards of Rules 8 and 10; the second amended complaint is a shotgun pleading; and Duarte fails to state a claim as to all counts. (Doc. 63 at 2). For the following reasons, the Court dismisses the claims against Trooper Rivera.

Before reaching the merits of the § 1983 claims, the Court outlines the legal framework for probable cause. "Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." *Laster v. City of Tampa Police Dept.*, 575 F. App'x 869, 872 (11th Cir. 2014) (citing 42 U.S.C. § 1983). An arrest or detention qualifies as a "seizure" of a person under the Fourth Amendment. *Manuel v. City of Joliet, Ill.,* 580 U.S. 357, 366–67 (2017); *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011).

The reasonableness of an arrest and detention under the Fourth Amendment "turns on the presence or absence of probable cause." *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009) (citation omitted). "Actual probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Davis*

14

*v. City of Apopka*, 356 F. Supp. 3d 1366, 1375 (M.D. Fla. 2018) (citations omitted) (cleaned up), *aff'd*, 78 F.4th 1326 (11th Cir. 2023). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

In deciding whether probable cause exists, an officer is "not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed. Nor does probable cause require certainty on the part of the police." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002) (citations omitted). The fact that the arrestee was never prosecuted, or the charges were dropped, or the arrestee was acquitted of any offense stemming from the arrest, does not impact the existence of probable cause. *Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002).

An officer who makes an arrest or detention without actual probable cause is nonetheless entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest. When qualified immunity is raised as a defense to false arrest claims, a court asks whether arguable probable cause existed for the arrest. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006). "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same

knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (quotations omitted). Qualified immunity allows ample room for mistaken judgments to prevent officials from erring on the side of caution due to a fear of litigation. *Id.* at 1446 (quotations omitted). A court looks to the totality of the circumstances to determine whether arguable probable cause exists. *Davis*, 451 F.3d at 763.

A plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). To do so, he must show that no reasonably objective police officer would have perceived there to be probable cause based on the totality of the circumstances. *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011). The existence of probable cause "constitutes an absolute bar" to a § 1983 claim for false arrest. *Rankin*, 133 F.3d at 1435.

The Court now turns to the merits. First, the Court addresses Duarte's Fourth Amendment unreasonable seizure claim (count 1). "An arrest made without probable cause is an unreasonable seizure." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). For qualified immunity to apply, the defendant public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *See Fish v. Brown*, 838 F.3d 1153, 1162 (11th Cir. 2016). That established, the court

16

engages in a two-step inquiry: (1) whether, taken in the light most favorable to the plaintiff, the factual allegations show the defendant's conduct violated a constitutional or statutory right; and (2) whether the constitutional or statutory right was clearly established. *See id.*

Trooper Rivera's actions fall within the scope of his discretionary authority as a law enforcement officer. Duarte does not dispute this. (*See generally* Doc. 65). So the Court considers whether Trooper Rivera violated Duarte's constitutional rights. For the following reasons, the Court finds he did not.

In the Eleventh Circuit, "[a]s long as probable cause existed to arrest the suspect for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." *Reid v. Henry Cnty., Ga.*, 568 F. App'x 745, 749 (11th Cir. 2014) (citing *Lee v. Ferraro,* 284 F.3d 1188, 1196 (11th Cir. 2002)). Duarte alleges Trooper Rivera's actions "directly caused Plaintiff's prolonged unlawful detention for 52 days beyond the initial marijuana possession charge, as they formed the basis for the unsubstantiated trafficking charge and probable cause determination at Plaintiff's first appearance." (Doc. 54 at 6). But Duarte does "not challenge the validity of [his] marijuana possession conviction." (*Id.* at 4). And he concedes that "probable cause existed for the marijuana possession charge." (*Id.* at 8). Duarte also concedes that the "NARK II Fentanyl Reagent's

17

false positive initially provided probable cause for the arrest," though he also alleges that the "fabricated claims . . . prolong[ed] [his] detention." (*Id.*).

Because Trooper Rivera had arguable probable cause to arrest Duarte, he is shielded by qualified immunity with respect to Duarte's Fourth Amendment unreasonable seizure claim. Having found no constitutional violation, the Court need not address the clearly established prong of the qualified immunity analysis. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) ("We may decide these issues in either order, but, to survive a qualified-immunity defense, the plaintiff must satisfy both showings.") (citation and internal alterations omitted). Thus, because Trooper Rivera is entitled to qualified immunity, the Court dismisses Duarte's § 1983 claim for unreasonable seizure (count 1) with prejudice.

Next, the Court addresses the two due process claims under § 1983. In count 2, Duarte alleges that Trooper Rivera violated his due process rights by relying on the false positive test result and by making the false claims explained above. These actions allegedly caused his prolonged unlawful detention and constituted a deceptive means of depriving him of liberty. Count 8 alleges much of the same, explaining that Trooper Rivera violated Duarte's due process rights by fabricating evidence and causing his prolonged incarceration and deprivation of liberty.

Trooper Rivera argues that count 8 should be dismissed because it is duplicative of count 2. (Doc. 63 at 23). He is right. But there is another duplication issue. While Duarte tries to bring these allegations in the context of due process, at bottom, they are both fabrication of evidence claims. And in the Eleventh Circuit,

> a fabrication-of-evidence claim is really just a species of malicious prosecution. Put differently, in this Circuit, the right a fabrication-of-evidence claim vindicates is the right not to be prosecuted with fabricated evidence. *See, e.g.*, *Kingsland*, 382 F.2d at 1234 ("Kingsland also asserts a § 1983 claim for malicious prosecution based on the defendants' alleged fabrication of evidence against her[.]"); *Johnson v. Darnell*, 781 F. App'x 961, 964 (11th Cir. 2019) ("As to Johnson's claim for malicious prosecution, he failed to allege facts that would plausibly suggest Cruz or Pino-Diaz were the legal cause of the proceeding against him. Specifically, as noted above, he failed to allege any facts concerning the substance of the evidence or statements Cruz or Pino-Diaz fabricated."); *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) ("Williams's malicious prosecution claim against Baaske is based upon Baaske's alleged act of fabricating evidence, which resulted in the prosecutor being presented with false and misleading evidence.").

*Watkins v. Officer Davlin Session*, No. 19-60810-CIV, 2021 WL 663762, at *10 (S.D. Fla. Feb. 19, 2021). The Court will not rewrite Duarte's due process claims for him. As pled, counts 2 and 8 are duplicative of each other and of his malicious prosecution claim (count 4). Under these circumstances, the Court dismisses the § 1983 due process claims without prejudice.[3]

---

[3] Trooper Rivera argues that the due process claims should be dismissed because arguable probable cause exists for Duarte's Fourth Amendment unreasonable seizure claim. (Doc. 63

Finally, the Court addresses Duarte's § 1983 malicious prosecution claim. To succeed on a malicious prosecution claim, a plaintiff must prove both "(1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Fields v. Chatmon*, No. 8:25-CV-843-KKM-NHA, 2025 WL 2257752, at *5 (M.D. Fla. Aug. 7, 2025) (quoting *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018)). "[T]he constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* (citing *Paez*, 915 F.3d at 1285 (alterations in the original)). "The Eleventh Circuit has recently simplified the malicious prosecution standard to three elements: (1) the legal process justifying the plaintiff's seizure was constitutionally infirm; (2) the seizure would not otherwise be justified without legal process; and (3) the criminal proceedings against the plaintiff terminated in his favor." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024) (cleaned up; citation omitted).

---

at 9). But Trooper Rivera's argument is largely conclusory. He does not develop it in a meaningful way— not such that the Court could determine that no due process claim could exist after the dismissal of the unreasonable seizure claim. Similarly, Trooper Rivera failed to sufficiently develop an argument that Duarte failed to state a due process claim, except to the extent it was duplicative of his fabrication of evidence claim.

First, unlike a claim of false arrest or false imprisonment, a plaintiff asserting a malicious prosecution claim must show "a seizure pursuant to legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citing *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)); *see also id.* ("A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests."). A seizure "pursuant to legal process" includes a warrant-based seizure, or, in the case of a warrantless arrest, a "seizure following an arraignment, indictment, or probable cause hearing." *Id.*

Duarte alleges that on "March 21, 2024, at a pre-trial detention hearing in Charlotte County, Rivera testified under oath, reiterating claims of a white powdery substance, that the Nark II marijuana test kit 'exploded' when he tested the marijuana, and a heroin possession history to justify Plaintiff's continued detention, and pre-trial detention was granted on the state's behalf." (Doc. 54 at 2). Liberally construing the pro se pleading, Duarte has alleged seizure pursuant to legal process— the pretrial detention hearing.

The Court turns to whether Trooper Rivera had arguable probable cause for the fentanyl-related charges. Duarte alleges that Trooper Rivera knowingly manipulated the NARK II test to produce a false positive.[4] (*Id.* at

---

[4] The Court acknowledges some inconsistency in the second amended complaint. In count 4, Duarte alleges that the "NARK II Fentanyl Reagent's false positive initially provided

21

3, 4, 8, 10 (alleging "the trafficking charge lacked probable cause due to the fabrications"). He also alleges that Trooper Rivera fabricated the following statements in his police report and under oath at Duarte's pretrial detention hearing: (1) Duarte's cannabis contained a white powdery substance; (2) Duarte had a criminal history of heroin possession; and (3) the NARK II test kit exploded during testing. (*Id.* at 4).

Trooper Rivera's motion to dismiss does not grapple with the allegations of fabricated statements at the pretrial detention hearing and whether probable cause nonetheless existed to support the fentanyl-related charges, as opposed to the marijuana charges. Instead, Trooper Rivera falls back on the undisputed probable cause supporting the marijuana arrest. (Doc. 63 at 10). But while count 1 fails based on the (conceded) probable cause for the arrest related to the marijuana, count 4 concerns the fentanyl charges. In *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558–59 (2024), the Supreme Court addressed a similar question:

> The question presented here arises when the official brings multiple charges, only one of which lacks probable cause. Do the valid charges insulate the official from a Fourth Amendment malicious-prosecution claim relating to the invalid charge? The answer is no: The valid charges do not

---

probable cause for the arrest." (Doc. 54 at 8). But at bottom, Duarte alleges that the "trafficking charge lacked probable cause due to the fabrications" (*id.*), and he alleges that Trooper Rivera knowingly manipulated the test to get a positive result and sustain probable cause. At this stage of the litigation, and with a pro se plaintiff, the Court construes these allegations in the light most favorable to Duarte and finds he alleges Trooper Rivera did not have probable cause for the trafficking charge.

> create a categorical bar. We leave for another day the
> follow-on question of how to determine in those
> circumstances whether the baseless charge caused the
> requisite seizure.

In other words, "the 'any-crime' rule does not apply to malicious prosecution claims—meaning that officers need to show probable cause for each of the exact crimes the officer said occurred in order to pass muster under the Fourth Amendment." *Sorrells v. Dodd*, No. 21-13568, 2024 WL 3981781, at *8 (11th Cir. Aug. 29, 2024). Here, Duarte's allegations of manipulated test results undermine arguable probable cause.

And otherwise, Duarte states a malicious prosecution claim. He alleges that Trooper Rivera's actions led to the fentanyl charges, that he acted with malice, the fentanyl charges were dropped, and his detention was prolonged due to Trooper Rivera's actions. The facts viewed in the light most favorable to Duarte establish a constitutional violation by Trooper Rivera.

The Court next examines whether the unlawfulness of Trooper Rivera's actions was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted).

A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that

right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted).  There are multiple ways a plaintiff can show a right is clearly established:

> First, he can show that a materially similar case has already been decided giving notice to the police.  He could also show that a broader, clearly established principle should control the novel facts in this situation.  Finally, he could show that this case fits within the exception of conduct which so obviously violates th[e] constitution that prior case law is unnecessary.  To make this showing, [the plaintiff] must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida.

*Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (citations omitted). Courts do not "require a case directly on point"; rather, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (citation omitted).  "[T]he crux of the qualified immunity test is whether officers have 'fair notice' that they are acting unconstitutionally."  *Id.* at 314 (Sotomayor, J., dissenting) (citation omitted).  For qualified immunity to be unavailable, "pre-existing law must dictate . . . the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000) (citation omitted).

Duarte points to *Manuel v. City of Joliet*, to satisfy the clearly established prong of qualified immunity.  (Doc. 65 at 1).  In that case, the petitioner was held in jail for several weeks after a judge relied on allegedly fabricated

24

evidence to find probable cause that he committed a crime. *Manuel*, 580 U.S. at 359. The Supreme Court held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 370. Though the Supreme Court did not analyze the details concerning the allegedly fabricated evidence, the Court concludes the facts are sufficient to show that Trooper Rivera violated a clearly established right. Accordingly, he is not entitled to qualified immunity on count 4.[5]

Turning to Duarte's state law claims.[6] Trooper Rivera argues that he is entitled to sovereign immunity on all the state law claims under Florida Statute § 768.28(9)(a), which provides:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

---

[5] Although the Court has found that Duarte's malicious prosecution claim passes muster at this stage, the Court nonetheless dismisses the second amended complaint as a shotgun pleading. So if he wishes to proceed with this action, Duarte must still file an amended pleading consistent with this Order and in compliance with Rules 8, 10, and all other Federal Rules of Civil Procedure and Local Rules of this Court.

[6] Although all of Duarte's federal claims giving rise to this Court's jurisdiction have been dismissed and the Court is not inclined to exercise supplemental jurisdiction, at this stage of the litigation, the Court analyzes the state law claims if Duarte files a third amended complaint.

Additionally, in his response, Duarte appears to argue that he pled a state law claim for malicious prosecution. (Doc. 65 at 3). But the second amended complaint only alleges a malicious prosecution claim under § 1983. Duarte may not amend his claims in his response. *See Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."). The Court addresses this issue no further.

(Doc. 63 at 10). Duarte alleges that Trooper Rivera was motivated by "actual malice through intentional lies, not mere error" and "knowingly or recklessly sustained [the fentanyl charges] with fabricated evidence." (Doc. 54 at 8). This is a close call. But at this early stage of the litigation, the Court finds that Duarte has—barely—alleged enough to find that Trooper Rivera is not entitled to sovereign immunity on the state law claims. So the Court examines whether Duarte's state law claims survive Trooper Rivera's Rule 12(b)(6) challenge. For the following reasons, they do not.

First, to state a negligence claim, Duarte must plead that Trooper Rivera had (1) a duty recognized by law; (2) breached that duty; (3) proximate causation; and (4) damages. *Hu v. Hua*, 414 So. 3d 179, 183 (Fla. Dist. Ct. App. 2025). His allegations do not meet this standard. Instead, he conclusorily alleges that Trooper Rivera "negligently relied" on the NARK II test's false positive and fabricated claims. (Doc. 54 at 9). And in his response, all Duarte says concerning his negligence claim is "Duty (proper testing), breach (unreliable NARK II), causation/damages (detention, fees)." (Doc. 65 at 5). This is insufficient to state a claim for negligence and regardless, this conclusory language does not even appear in the second amended complaint — it is just in his response. As a result, he fails to allege facts establishing any of the elements of negligence, and count 5 is dismissed without prejudice.

Next, defamation. To state a defamation claim, Duarte must properly plead that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff. *Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. Dist. Ct. App. 2002). "[P]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Cassell v. India*, 964 So. 2d 190, 194 (Fla. Dist. Ct. App. 2007) (quoting *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. Dist. Ct. App. 1997)). The privilege extends to police officers and "all public officials, regardless of the branch of government or the level of the official." *Id.* "The controlling factor in deciding whether the absolute privilege applies is 'whether the communication was within the scope of the officer's duties.'" *Id.* (quoting *City of Miami v. Wardlow*, 403 So. 2d 414, 416 (Fla. 1981)). "The scope of an officer's duties to be liberally construed," and "'duties' is not confined to those things required of the officer but rather extends to all matters which he is authorized to perform." *Id.*

Duarte alleges that Trooper Rivera's false statements in his police report, sourced from FHP, led to a gulfcoastnewsnow.com article that falsely labeled him as a fentanyl dealer. (Doc. 54 at 9). He does not allege that the statements were made outside the scope of Trooper Rivera's duties. And in his response, all Duarte states is "False statements in report/media, recklessness, harm (reputation/social ostracism)." (Doc. 65 at 5). Again, even if this

27

language was in the second amended complaint, it is insufficient to state a defamation claim. In any event, the Court finds that the allegedly false statements leading to the article were made in the course of Trooper Rivera's duties as a member of FHP. Because the statements fall within his duties as an officer, he is immune from a defamation claim based on those statements. Thus, count 6 is dismissed with prejudice.

Next, the IIED claim. The elements are: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress suffered by the plaintiff; and (4) proof that the conduct caused the severe emotional distress. *Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1199 (M.D. Fla. 2002), *aff'd sub nom. Gonzalez-Jiminez de Ruiz v. United States*, 378 F.3d 1229 (11th Cir. 2004). "Only in extremely rare circumstances will courts uphold claims for intentional infliction of emotional distress." *Id.* The alleged action must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and be regarded as "atrocious and utterly intolerable in a civilized community." *Id.* Whether a plaintiff has alleged conduct which meets the essential elements for a claim for IIED is a matter of law to be decided by the Court. *Id.*

Duarte alleges that Trooper Rivera "caused [him] severe emotional distress through his unsubstantiated trafficking charge and fabricated claims

in his police report." (Doc. 54 at 10). He describes the fabrications as "intentional or reckless" and argues they "went beyond standard law enforcement procedures and constituted extreme and outrageous conduct from fabrication." (*Id.*). In his response, Duarte merely states: "Extreme conduct (fabrication causing wrongful incarceration), intent/recklessness, severe distress." (Doc. 65 at 5).

The Court easily finds that this is not one of the "extremely rare" cases in which a defendant's conduct was outrageous enough to sustain a claim for IIED. Duarte's characterization of Trooper Rivera's actions as extreme and outrageous is conclusory. And regardless, the alleged conduct of fabricating statements in a police report and failing to verify his criminal history certainly do not go "beyond all possible bounds of decency," *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985), and are not "utterly intolerable in a civilized community," *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. Dist. Ct. App. 1995), as required by Florida law. Because Duarte has not alleged outrageous conduct, count 7 is dismissed without prejudice.

Finally, the negligence per se claim brought under Fla. Stat. § 901.211 "or similar." (Doc. 54 at 10). Section 901.211 concerns the circumstances under which law enforcement may perform strip searches on criminal detainees. Duarte does not allege that he was strip searched. And his response merely

states: "Violations of statutes/policies (*e.g.*, § 901.211 evidence handling) causing harms." (Doc. 65 at 5). The Court agrees with Trooper Rivera that it is "wholly unclear how or why this statute would establish negligence on the part of any defendant, or why it even applies to the facts Plaintiff has alleged." (Doc. 63 at 22). Accordingly, count 9 is dismissed without prejudice.

Accordingly, it is now **ORDERED:**

1. Defendant Florida Highway Patrol's Motion to Dismiss Amended Complaint With Prejudice (Doc. 60) is **GRANTED** on the basis of sovereign immunity.

2. Defendant Trooper Javier Rivera's Motion to Dismiss Plaintiff's Second Amended Complaint With Prejudice (Doc. 63) is **GRANTED** to the extent stated above.

3. The Second Amended Complaint (Doc. 54) is **DISMISSED**.

4. The Clerk is **DIRECTED** to terminate FHP as a defendant.

5. By **January 30, 2026**, Duarte may file a third amended complaint. **Failure to do so may result in dismissal of this case without further notice**.

**DONE** and **ORDERED** in Fort Myers, Florida on January 16, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record